# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN MARTZ, | : | |
|     Plaintiff | : | |
| v. | : | CIVIL NO. 3:11-CV-830 |
| SCI-COAL TWP. THERAPEUTIC COMMUNITY, et al., | : | (Judge Munley) |
|     Defendants | : | |

## MEMORANDUM

**Background**

Shawn Martz ("Plaintiff") initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983 regarding his prior confinement at the State Correctional Institution, Coal Township, Pennsylvania ("SCI-Coal Twp.").[1]  By Memorandum and Order dated February 8, 2012, Defendants' motion to dismiss Plaintiff's Complaint was partially granted.  Specifically, dismissal was entered in favor of Defendants SCI-Coal Twp.; the SCI-Coal Twp. TC program; the Pennsylvania Department of Corrections; and the Pennsylvania Department of Probation and Parole.

Remaining Defendants are two (2) SCI-Coal Twp. Officials, Grievance Officer

---

[1] Plaintiff was last known to be housed at a Community Corrections Center (CCC) in Pittsburgh, Pennsylvania.

1

Linda Chismar and Supervisor Mike Vivian of the Drug and Alcohol Treatment staff.[2]

Plaintiff alleges that in order for him to obtain favorable parole consideration he must complete a substance abuse program known as Therapeutic Community (TC). TC is an intensive inpatient alcohol and drug abuse treatment program offered at Pennsylvania state correctional facilities. The SCI-Coal Twp. TC program is supervised by Defendant Vivian. According to the Complaint, if Plaintiff refuses to complete TC, he will be required him to serve his maximum sentence. See Doc. 1, p. 3.

After being classified as appropriate for enrollment in the TC program, Martz declined participation because it would conflict with his religious beliefs and he needed to spend more time in the prison law library than that which was allotted to TC prisoners. Plaintiff explains that his request for an alternate secular program to meet his prescriptive needs was denied in violation of his First Amendment rights as well as the terms of his criminal sentence.

Plaintiff acknowledges that he was informed by Defendant Chismar that "a secular program would be made available to him within the T.C. itself; whereby he would be permitted to remove himself at the mention of God, taking his books to study secularly on the other side of the room." Id., p. 5. However, the Complaint alleges that "[t]he book or books Miss Chismar intends he study secularly on the other side of the room" are "permeated with references to God and spirituality" which would preclude Martz from

---

[2] The claims against Vivian and Chismar in their official capacities were dismissed.

2

being able to adequately participate in the T.C. program. Id. at p. 5-6.

Defendant Vivian also allegedly created a policy providing that prisoners participating in TC are only provided with two (2) hours of library time per week. Plaintiff alleges that Vivian's TC law library policy violates his right of access to the courts. With respect to Grievance Officer Chismar, Martz alleges that said Defendant refused to take appropriate action following his submission of an institutional grievance regarding his pending claims. The Complaint seeks compensatory and punitive damages.

Presently pending is the Remaining Defendants' motion seeking entry of summary judgment. See Doc. 35. The opposed motion is ripe for consideration.

**Discussion**

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D.

607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Establishment Clause**

Remaining Defendants' initial summary judgment argument contends that Plaintiff's claims under the Establishment Clause of the First Amendment must fail because the TC program is not based on any religion or faith based system and does not require any type of spiritual belief. See Doc. 37, p. 2. In support of their argument they

4

have submitted a declaration under penalty of perjury by Defendant Chismar who identifies herself as being the SCI-Coal Twp. Corrections Classification and Program Manager. See Doc. 36-1, Exhibit A. Chismar states that the DOC has established a method of providing alcohol and other drug (AOD) abuse treatment programs to state inmates.

Chismar asserts that in accordance with those DOC guidelines, SCI-Coal Twp. offers a variety of substance abuse programs on both an inpatient and outpatient basis. See id. at ¶ 5. She describes TC as being a "highly-intensive inpatient AOD abuse treatment program" which is offered at the prison. Id. at ¶ 8. Participation in the TC program is voluntary. Moreover, Chismar stresses that inmate participants are not forced to participate or subscribe to any religious or spiritual activities or beliefs. She further describes TC as not being affiliated with any religion or based upon any religious concept and simply employs behavior modification techniques. See id. at ¶ 10. It is also noted by Chismar that prisoners of all faiths participate in TC and the other substance abuse programs offered at the prison.

Chismar states that the prison does have AOD treatment secular options (those programs are commonly referred to as S.O.S., S.M.A.R.T., and Rational Recovery[3]) which do not rely on the higher power approach employed the Alcohol Anonymous (AA)

---

[3] Information regarding the materials which comprise the secular self-help option accompany Chismar's declaration and support her contention that those materials are not permeated with references to God and spirituality.

5

or Narcotics Anonymous (NA) programs offered at the prison.[4] These secular options are "self empowerment approaches to recovery" which maintain that sobriety is a separate issue from religion or spirituality." Id. at ¶ 12. She points out that contrary to Plaintiff's assertion, these alternative secular materials are not permeated with references to God and spirituality. See id. at ¶ 18.

With respect to the Plaintiff, Chismar avers that the inmate underwent a standardized drug screen which resulted in a recommendation that he participate in the TC program. Martz was advised that enrollment in the TC program was optional but that failure to participate may have some impact on his parole eligibility. On June 27, 2010, Plaintiff refused the option to participate in TC. The refusal was noted in his institutional file.

According to Chismar, Martz stated to prison officials, including herself, that he did not wish to attend TC because he wanted to spend more time in the prison law library, wished to continue in a vocational course, and had been told that TC was a faith based program. See id. at ¶¶ 29-30. Chismar adds that after she informed Plaintiff that there was a non-faith based option available for prisoners in the TC program and that he would have more library time while in TC, he still refused to accept TC placement.

Chismar further notes that the DOC recommended Plaintiff for parole on December

---

[4] The record indicates that prisoners in TC attend AA and NA meetings. The secular option is apparently offered in lieu of attending those meetings.

21, 2012 and he obtained release to a Community Corrections Center (CCC) on November 13, 2012. Therefore, despite not attending TC, Martz nonetheless availed himself of other institutional programming which allowed him to obtain favorable parole consideration. In conclusion, Remaining Defendants assert that since secular options were made available to Plaintiff and he was not mandated to attend TC there was no Establishment Clause violation.

Plaintiff's opposing brief counters that "just because SCI-Coal might have an secular program in place does not mean they have a program in use." Doc. 38, p. 2. Martz has also submitted declarations under penalty of perjury from two former SCI-Coal Twp. inmates who completed the prison's TC program, Charles Brown (completed TC in November 2009) and Steven Anderson (completed TC in August 2011), who similarly aver that even though the secular option may have existed on paper there was no actual secular alternative offered with respect to the faith based portion of the SCI-Coal Twp. TC program. Brown and Anderson elaborate that there were no available S.O.S. or S.M.A.R.T. group meetings and attendance at AA/NA meetings was mandatory for TC participants.[5]

As previously discussed by this Court's February 8, 2012 Memorandum and Order, the First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..." U.S. Const. Amend. I. It is undisputed that prisoners do not entirely forfeit all constitutional guarantees by reason of

---

[5] The issue of whether there were secular group meetings is different from the question of whether an individual secular option was provided.

their conviction and confinement. Bell v. Wolfish, 441 U.S. 520, 545 (1979). An inmate must be afforded reasonable opportunity to exercise his religious beliefs under the First Amendment. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).

However, imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). An inmate plaintiff must establish that he had a sincerely held belief which was religious in nature before the First Amendment free exercise protections are deemed applicable. Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981).

A prisoner must establish that he had a sincerely held religious belief and that a prison policy or official practice substantially burdened his exercise of those religious beliefs. There is no present contention by Remaining Defendants that Martz's religious beliefs were not sincerely held.[6]

Substantial burden is satisfied when: (1) a prisoner is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning a precept of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. Gould v. Beard, 2010 WL 845566 * 4-5 (W.D. Pa. 2010). Once a viable claim is asserted, the Government has the burden of demonstrating the burden furthers a compelling governmental interest and is the least restrictive means of

---

[6] Plaintiff does not specifically describe his religious beliefs other than to indicate that they conflicted with the T.C. program.

doing so. See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007).

In Bobko v. Lavan, 157 Fed Appx. 516 (3d Cir. 2005), the Third Circuit Court of Appeals addressed a claim by a prisoner who also refused to participate in TC. The Court of Appeals recognized that state officials violate the First Amendment's Establishment Clause when it requires a prisoner to participate in a drug or alcohol rehabilitation with a religious component. However, since the Defendants in Bobko "submitted evidence establishing that SOS, a secular approach to recovery, is available in the TC program" the Court of Appeals determined that there was no Establishment Clause violation. Id. at 518.

Based upon a review of the record, the following facts are undisputed. While incarcerated on August 14, 2008, Plaintiff underwent a standardized drug and alcohol screening test. As a result of that test, Martz was recommended for the TC program. The Plaintiff was advised that he had the option of whether to enroll in TC or not. However, the prisoner was advised that failure to participate could negatively impact the DOC's determination as to whether he should be recommended for parole.

On June 27, 2010, Plaintiff was offered TC placement. Martz declined participation and never entered the TC program. In January 2011, Plaintiff filed a staff request and an administrative grievance regarding his objections to the TC program. In those submissions, Martz indicated that he wanted to defer TC because he needed to spend as much time as possible in the prison law library because of pending personal legal matters. Martz's grievance also voiced his concerns that he had been informed that TC was a faith based program and that he wanted to continue in a vocational course. Defendant Chismar personally met with Plaintiff on February 15, 2011 to discuss those

submissions. Martz was advised that the TC program included a non-faith based secular option, he would be afforded law library time while in TC and that any request by the inmate to spend extra time in the law library due to a court date or deadline could be accommodated.

Martz's minimum release date was January 18, 2013. His maximum release date was January 18, 2018. Plaintiff obtained pre-release placement in a CCC on November 13, 2012. On December 12, 2012, the DOC recommended Martz for parole. This recommendation occurred without Martz ever having participated in TC. Although he was not released on his minimum release date of January 18, 2013, Plaintiff was scheduled for another parole review in June, 2013. The results of that review have not been provided to the Court.

Since Plaintiff obtained a favorable recommendation by the DOC and was transferred to a CCC for pre-release placement, his claim that he would have to serve his maximum sentence because his refusal to attend TC programming would preclude a favorable DOC parole recommendation clearly lacks merit. However, there is still the issue as to whether the Parole Board denied Martz parole on his minimum release date for failure to complete TC.

Bobko was denied parole due to his failure to complete TC. It is unclear why parole was denied to Martz. Remaining Defendants have submitted what they describe as being copy of a December 18, 2012 adverse parole decision in Martz's case. See Doc. 36-1, Exhibit 7. However, that decision pertains to another Pennsylvania state inmate and it

10

appears to have been erroneously filed in this matter. Accordingly, that completely irrelevant exhibit will be ordered stricken from the record.

Plaintiff has submitted supporting declarations of two fellow inmates which arguably create a question of material fact as to whether a secular option to the religious/spiritual segment of the TC was actually provided at SCI-Coal Twp. or whether it only existed on paper. Also of concern, is the fact that this Court has not been provided with a copy of the Parole Board's denial of parole to Martz with respect to his minimum eligibility date. Moreover, the Court has not been provided with any information as to the outcome of Plaintiff's June 2013 parole proceedings.

In light of those deficiencies, the limited claim that the Establishment Clause was violated in that the Parole Board denied parole to Martz for failure to complete TC will proceed. However, the parties will be granted an additional opportunity to file dispositive motions regarding this surviving allegation.

**Criminal Sentence**

Plaintiff raises a vague contention that the denial of his request for an alternate secular program to meet his substance abuse prescriptive needs violated the terms of his criminal sentence. The gist of this claim appears to be Plaintiff's contention that if he refuses to complete the TC program he would be ineligible for parole in violation of his plea bargain. See Doc. 1, p. 4. Although it is undisputed that he has obtained a favorable DOC parole recommendation, it appears that Plaintiff is contending that the alleged unconstitutional actions attributed to the Remaining Defendants nonetheless delayed his

11

parole eligibility thereby increasing the amount of time he must spend incarcerated.[7]

Martz's Complaint seeks compensatory and punitive damages as well as declaratory relief. In Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid", until the Plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87.

There is no assertion in the Complaint that any tribunal has made a determination that the terms of Plaintiff's criminal sentence were violated or that he was unjustly denied parole on his minimum release date. Based on the nature of Martz's allegations, a finding in his favor would imply the invalidity and/or comprise the parole eligibility determination at issue herein. Thus, any request by Plaintiff for monetary damages against any correctional official is premature because Martz cannot maintain a cause of action for unlawfully extended imprisonment until the basis for that allegedly improperly extended imprisonment (i.e., a finding that the terms of his criminal sentence were violated via an adverse parole determination) is rendered invalid by an appropriate tribunal. See Gibson v. Superintendent, 411 F.3d 427, 449 (3d Cir. 2005); Sanchez v. Gonzalez, No. 05-2552, 2005 WL 2007008 *2 (D.N.J. Aug. 16, 2005).

---

[7] The Court recognizes that this claim against two correctional staff members would appear to be undermined by the fact that the DOC conferred a favorable parole recommendation prior to Martz's minimum eligibility date.

Any request by Martz for compensatory and punitive damages is premature and must be deferred under Gibson and Sanchez until there is a determination that the parole decision which denied him release on his minimum parole eligibility date violated the terms of his criminal sentence and is rendered invalid. Thus, if Plaintiff is able to successfully challenge that parole denial, under Heck, he may then reassert a claim for damages in a properly filed civil rights complaint.

Similarly, inmates challenging the duration of their confinement or seeking earlier or speedier release must assert such claims in a properly filed habeas corpus petition. Preiser v. Rodriguez, 411 U.S. 475 (1975), Telford v. Hepting, 980 F.2d 745, 748 (3d Cir.), cert. denied 510 U.S. 920 (1993). Federal habeas corpus review is the appropriate remedy when "the deprivation of rights is such that it necessarily impacts the fact or length of detention." Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002). The Third Circuit Court of Appeals in Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005), reiterated that federal habeas corpus review allows a prisoner "to challenge the 'execution' of his sentence."

Accordingly, to the extent that Martz is presently seeking earlier release, such a request for relief is not properly asserted in a civil rights complaint under the standards announced in Preiser and Leamer. See generally Georgevich v. Strauss, 772 F.2d 1078, 1086 (3d Cir. 1985) (civil rights claims seeking release from confinement sound in habeas corpus). Likewise, a civil rights claim for declaratory relief "based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable" in a § 1983 civil rights action. Edwards v. Balisok, 520 U.S. 641, 646 (1997). Pursuant to the above

13

discussion, any requests by Martz for monetary damages and declaratory relief, i.e., a ruling that he is entitled to earlier release with regards to his claim that his criminal sentence was violated are not properly before this Court.

Furthermore, it is undisputed that although Plaintiff did not complete TC, he nonetheless received a DOC recommendation for parole and obtained pre-release to a CCC prior ro his minimum parole eligibility release date. Based upon those considerations, it would appear that any claims against the two Remaining Defendant correctional staff members based upon failure to afford Martz with a favorable recommendation for parole for the prisoner's failure to complete TC is subject to dismissal on the basis of mootness. Accordingly, summary judgment will be granted regarding Plaintiff's contentions that Remaining Defendants violated the terms of his criminal sentence and failed to provide him with a favorable DOC parole recommendation.

**Access to the Courts**

In his Complaint, Martz included a claim that Defendant Vivian enacted a policy which limited TC participants to two (2) hours per week of access to the prison law library. Plaintiff maintained that the policy attributed to Defendant Vivian violated his right of access to the courts. Since the previously filed motion to dismiss did not address this contention, Martz's access to the court claim was allowed to proceed.

Remaining Defendants assert that they are entitled to entry of summary judgment because Martz has not shown that he suffered any actual injury with regards to the purported denial of access to the courts. See Doc. 37, p. 6. They further note that the claim

14

is meritless since Plaintiff never entered the TC program and thus, was never denied sufficient access to the law library as a result of the TC program. Martz's opposing brief does not address this summary judgment argument.

Inmates have a constitutional right of meaningful access to the law libraries, legal materials, or legal services. Bounds v. Smith, 430 U.S. 817, 821-25 (1977). In Lewis v. Casey, 518 U.S. 343, 351-54 (1996), the Supreme Court clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded. A plaintiff must also allege an actual injury to his litigation efforts.

Based upon a review of the Complaint, Plaintiff raises no contention that his pursuit of a non-frivolous legal claim was frustrated or impeded due to any conduct attributed to either of the Remaining Defendants. Accordingly, under the standards announced in Lewis, entry of summary judgment in favor of the Remaining Defendants is appropriate with respect to Martz's denial of access to the courts claim.

**Conclusion**

Based upon the determinations set forth herein, Remaining Defendants Vivian and Chismar are entitled to entry of summary judgment with regards to the claims that: (1) they violated the terms of Martz's criminal sentence; (2) Plaintiff would have to serve his maximum sentence because his refusal to attend TC programming precluded a favorable DOC parole recommendation; and (3) there was a violation of his right of access to the court.

Summary judgment will be denied with respect to the surviving, limited claim that

15

Remaining Defendants violated Plaintiff's rights under the Establishment Clause of the First Amendment in that the Parole Board denied parole to Martz on his minimum release date for failure to complete TC. However, the parties will be granted a final opportunity to submit any additional dispositive motions addressing said claim. An appropriate Order will enter.

**BY THE COURT:**

**s/James M. Munley_____**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

**DATED: SEPTEMBER 4, 2013**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHAWN MARTZ,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | **CIVIL NO. 3:11-CV-830** |
| : | |
| **SCI-COAL TWP. THERAPEUTIC** : | **(Judge Munley)** |
| **COMMUNITY, et al.,** : | |
| : | |
| **Defendants** : | |

**ORDER**

**AND NOW**, to wit, this 4th day of September, 2013, for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** that:

1. Remaining Defendants Mike Vivian and Linda Chismar's motion for summary judgment (Doc. 35) is **PARTIALLY GRANTED.**

2. Summary judgment is **ENTERED** in favor of the Remaining Defendants with regards to the claims that: (1) they violated the terms of Plaintiff's criminal sentence; (2) he would have to serve his maximum sentence because his refusal to attend TC programming would preclude a favorable DOC parole recommendation and (3) violation of his right of access to the court.

3. The request for summary judgment with respect to the claim that Remaining Defendants violated Plaintiff's rights under the Establishment Clause of the First Amendment in that the Parole Board denied parole to Martz on his minimum release date for failure to complete TC. is **DENIED** and said claim will proceed.

4. Within thirty (30) days of the date of this Order, the parties may submit any additional dispositive motions regarding the surviving claim.

5. Exhibit 7 of the exhibits accompanying Remaining Defendant Chismar's declaration is **STRICKEN** from the record. Doc. 36-1, Exhibit 7.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**