**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHAWN MARTZ,** | : |
| | : |
| **Plaintiff** | : |
| | : |
| v. | : CIVIL NO. 3:11-CV-830 |
| | : |
| **SCI-COAL TWP. THERAPEUTIC** | : (Judge Munley) |
| **COMMUNITY, et al.,** | : |
| | : |
| **Defendants** | : |

**MEMORANDUM**

**Background**

Shawn Martz ("Plaintiff") initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983 regarding his prior confinement at the State Correctional Institution, Coal Township, Pennsylvania ("SCI-Coal Twp."). The Court was recently notified that Plaintiff has been retaken into custody and is presently confined at the Cambria County Prison, Ebensburg, Pennsylvania.

Remaining Defendants are Grievance Officer Linda Chismar and Drug and Alcohol Treatment Supervisor Mike Vivian of SCI-Coal Twp. Plaintiff's Complaint, which is postmarked April 29, 2011, alleges that in order to obtain favorable parole consideration Martz was told by prison officials that he would have to complete a substance abuse program known as Therapeutic Community (TC). TC is described as being an intensive inpatient alcohol and drug abuse treatment program which is offered at

1

Pennsylvania state correctional facilities. Defendant Vivian supervises the SCI-Coal Twp. TC program.

Martz claims that he was warned that if he refused to complete TC, he would be required to serve his maximum sentence by the Pennsylvania Board of Probation and Parole (Parole Board). See Doc. 1, p. 3. Upon being declared eligible for enrollment in the TC program, Martz declined participation because he felt that it conflicted with his religious beliefs and needed to spend more time in the prison law library for pursuit of his court actions than that which was allotted to inmates enrolled in TC. Plaintiff alleges that his request for an alternate secular program to meet his prescriptive needs was denied in violation of his rights under the Establishment Clause of the First Amendment.

The Complaint concedes that Martz was informed by Defendant Chismar that "a secular program would be made available to him within the TC itself; whereby he would be permitted to remove himself at the mention of God, taking his books to study secularly on the other side of the room." Id., p. 5. However, the Complaint alleges that "[t]he book or books Miss Chismar intends he study secularly on the other side of the room" are "permeated with references to God and spirituality" which would preclude Martz from being able to adequately participate in the TC program. Id. at p. 5-6. Grievance Officer Chismar purportedly refused to take appropriate action following Martz's submission of an institutional grievance. The Complaint seeks compensatory and punitive damages or any other relief. See id. at p. 6.

By Memorandum and Order dated February 8, 2012, Defendants' motion to dismiss

2

Plaintiff's Complaint was partially granted. Specifically, dismissal was granted in favor of Defendants SCI-Coal Twp.; the SCI-Coal Twp. TC program; the Pennsylvania Department of Corrections; and the Pennsylvania Department of Probation and Parole. See Doc. 17. Dismissal was also granted in favor of Remaining Defendants Chismar and Vivian with respect to the claims against them in their official capacities. The claims against Vivian and Chismar in their individual capacities that those two officials violated Plaintiff's rights under the Establishment Clause of the First Amendment, his right of access to the courts, and the terms of his criminal sentence were allowed to proceed.

Remaining Defendants subsequently filed a summary judgment motion which raised the following arguments: (1) Plaintiff's claims under the Establishment Clause must fail because the TC program is not based on any religion or faith based system and does not require any type of spiritual belief; and (2) Martz has not shown that he suffered any actual injury with regards to the purported denial of his right of access to the courts. See Doc. 37, p. 2. A September 4, 2013, Memorandum and Order issued by this Court partially granted that motion for summary judgment. See Doc. 40.

Summary judgment was granted in favor of Chismar and Vivian with regards to the claims that: (1) they violated the terms of Plaintiff's criminal sentence;[1] (2) Plaintiff would

---

[1] Plaintiff raised a vague contention that the denial of his request for an alternate secular program to meet his substance abuse prescriptive needs violated the terms of his criminal sentence. The gist of this claim appeared to be Plaintiff's contention that if he refuses to complete the TC program he would be ineligible for parole in violation of his plea bargain. See Doc. 1, p. 4.

3

have to serve his maximum sentence because his refusal to attend TC programming would preclude a favorable DOC parole recommendation;[2] and (3) violation of his right of access to the court.

However, the request for summary judgment was denied with respect to the sole limited claim that Remaining Defendants violated Plaintiff's rights under the Establishment Clause of the First Amendment because Martz was allegedly denied parole on his minimum release date for failure to complete TC. The parties were also granted a further opportunity to submit dispositive motions regarding this sole remaining allegation.

Presently pending is Remaining Defendants' second motion seeking entry of summary judgment. See Doc. 43. The opposed motion is ripe for consideration.

**Discussion**

The following facts are undisputed. Plaintiff entered the custody of the Pennsylvania Department of Corrections (DOC) for the purpose of serving a five (5) to ten (10) year state sentence on August 12, 2008. Martz's minimum release date was January 18, 2013 and his maximum release date was January 18, 2018.

Second, the DOC has established a method of providing alcohol and other drug (AOD) abuse treatment programs to state inmates. In accordance with DOC guidelines,

---

[2] Any claims against Remaining Defendants based upon failure to afford Martz with a favorable institutional recommendation for parole because of the prisoner's failure to complete TC were dismissed since received since he received a DOC recommendation for parole and obtained pre-release to a CCC prior ro his January 18, 2013 minimum parole eligibility release date. However, the Complaint also included a claim that Martz would be denied parole if he failed to complete TC.

SCI-Coal Twp. offers a variety of substance abuse programs on both an inpatient and outpatient basis. TC is a highly-intensive inpatient AOD abuse treatment program which is offered at SCI-Coal Twp.. Participation in the TC program is voluntary. After undergoing a standardized drug screen, Plaintiff was recommended for participation in the TC program. Martz was advised that he had the option of whether to enroll in TC or not. However, the prisoner was advised that failure to participate could negatively impact the DOC's determination as to whether he should be recommended for parole.

On June 27, 2010, Plaintiff refused the option to participate in TC. This refusal was noted in his institutional file. Martz never entered the SCI-Coal Twp. TC program but he did participate in other institutional programming. This civil rights action was subsequently initiated during late April, 2011.

Third, neither of the two Remaining Defendants are employees of the Parole Board. Rather, Vivian and Chismar are DOC employees assigned to SCI-Coal Twp. Prior to his initial review by the Parole Board, Martz received an institutional recommendation for parole by DOC staff including Chismar on August 16, 2012. On October 12, 2012, the Parole Board denied parole to Martz on his minimum parole eligibility date. Neither of the Remaining Defendants participated in that determination. Moreover, that decision was contrary to Chismar's recommendation.

Plaintiff was subsequently transferred to a Community Corrections Center (CCC) on November 13, 2012. While at that facility, Martz completed an inpatient "Renewal

Treatment Inc" program as of January 4, 2013.  See Doc. 48, p. 3.  Plaintiff describes said program as being a TC type program.  The DOC again recommended Plaintiff for parole on December 21, 2012 and he was grated parole by the Parole Board via decision dated May 6, 2013.   Martz was released on June 18, 2013 (six months after his minimum parole eligibility date).

Remaining Defendants claim entitlement to entry of summary judgment on the grounds that: (1) the record does not support Plaintiff's claim of a violation of the Establishment Clause; (2) Remaining Defendants were not personally involved in the denial of parole; (3) Plaintiff failed to comply with the exhaustion of administrative remedies requirement; and (4) § 1983 cannot be used to challenge a parole decision.  See Doc. 44, p. 4.  Plaintiff counters that he was only granted parole after participating in TC and that he participated in no other institutional programs.  See Doc. 48.

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-

finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Section 1983**

Remaining Defendants argue in part "prisoners cannot use § 1983 to challenge the

fact or duration of their confinements or to seek immediate or speedier release.' Doc 44, p. 8.

This Court's Memorandum and Order of September 4, 2013, citing Preiser v. Rodriguez, 411 U.S. 475 (1975), Telford v. Hepting, 980 F.2d 745, 748 (3d Cir.), cert. denied 510 U.S. 920 (1993) previously recognized that Martz could not challenge the duration of his confinement or seek earlier or speedier release since such claims must be asserted in a properly filed habeas corpus petition. See Doc. 40, p. 13.

The Memorandum and Order also noted that any request by Plaintiff for monetary damages against any correctional official is premature because Martz cannot maintain a cause of action for unlawfully extended imprisonment until the basis for that allegedly improperly extended imprisonment (i.e., a finding that the terms of his criminal sentence were violated via an adverse parole determination) is rendered invalid by an appropriate tribunal. See Gibson v. Superintendent, 411 F.3d 427, 449 (3d Cir. 2005); Sanchez v. Gonzalez, No. 05-2552, 2005 WL 2007008 *2 (D.N.J. Aug. 16, 2005).  See Doc. 40, p. 12.  Accordingly, this Court, as it has already opined, agrees that Plaintiff cannot use this action to obtain his release or challenge the fact or duration of his confinement.

However, the United States Supreme Court in Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) announced that prisoners may challenge the constitutionality of state parole proceedings in § 1983 actions seeking declaratory and injunctive relief.[3]  The Court

---

[3] It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).  Moreover, the Pennsylvania parole statute does not create a liberty interest in the right to be paroled.

(continued...)

8

indicated that such actions could only be employed in cases where success of the procedural challenges would not necessarily require immediate or speedier release for the prisoner. Thus, Plaintiff's remaining claim only the extent that it rests on Wilkinson can be pursued under § 1983.

**Personal Involvement**

Remaining Defendants assert that they are entitled to entry of summary judgment because they were not involved in the Parole Board's decision to initially deny parole to Martz. See Doc. 44, p. 7.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d

---

[3](...continued)
Rodgers v. Parole Agent SCi-Frackville, Wech, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996); Thorpe v. Grillo, 80 Fed.Appx. 215, 2003 WL 22477890 (3d Cir. 2003)(because there is no constitutional right to parole, any substantive due process claim is foreclosed).

1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, any attempt by Plaintiff to establish liability against a defendant solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

As previously noted, the two Remaining Defendants are employees of SCI-Coal Twp. not the Parole Board. There are also no discernible claims set forth in the Complaint that Vivian and Chismar were not involved in the actual decision making conducted by the

Parole Board with respect to the Plaintiff.  Copies of the Parole Board decisions relating to Martz which have been submitted in support of this motion likewise support a determination that Remaining Defendants were not involved in the initial denial of parole which remains at issue herein.  See Doc. 46.  This determination is bolstered by the fact that undisputed evidence shows that Chismar voted in favor of giving Plaintiff a favorable institutional recommendation for parole prior to his initial Parole Board review.  See id. at Exhibit B.

Furthermore, any attempt to establish liability against those individuals based upon either their respective supervisory capacities within SCI-Coal Twp. or their review of any institutional grievance filed by Plaintiff is insufficient for establishing civil rights liability against the Remaining Defendants.

**Administrative Exhaustion**

Remaining Defendants next argue that the surviving claim "is really a premature challenge to a parole decision."  Doc. 44, p. 8.  This action was filed in April 2011.  Martz was recommended for parole by DOC staff including Chismar on August 16, 2012.[4]   On October 12, 2012, the Parole Board denied parole to Martz on his minimum parole eligibility date.

Entry of summary judgment is appropriate when a prisoner litigant has failed to exhaust his available administrative remedies before bringing a civil rights action.  See

---

[4] As discussed earlier herein, any claims against Remaining Defendants based upon failure to afford Martz with a favorable recommendation for his initial parole review  because of the prisoner's failure to complete TC were previously dismissed

11

generally Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 127 S.Ct. 910, 923 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

Since this Complaint was filed prior to the Parole Board's initial decision to deny parole, any claim against the Remaining Defendants with respect to any purported involvement in that decision was clearly not exhausted prior to the filing of this action and

as such is subject to dismissal on the basis of non-exhaustion.**⁵**

Likewise any challenge to that parole decision itself would first have to be challenged in Pennsylvania state court and then if necessary, in federal court via a habeas corpus action.

## Establishment Clause

The only claim remaining in this action is whether the Establishment Clause was violated by the two Remaining Defendants in that Martz was denied parole on his minimum release date for failure to complete TC. In denying the earlier request for summary judgment, this Court noted that was unclear as why parole was initially denied to Martz.

Specifically, in support of their prior summary judgment motion, Remaining Defendants submitted what was described as being copy of a December 18, 2012 adverse parole decision in Martz's case. See Doc. 36-1, Exhibit 7. However, that decision actually pertained to another inmate and as such was stricken from the record as being a clearly irrelevant submission. Moreover, in addition to not being provided with accurate information regarding Plaintiff's initial parole determination, the Court was also not provided with any information as to the outcome of Plaintiff's subsequent 2013 parole proceedings. Based upon those limited areas of concern, the request for summary judgment was partially denied.

Remaining Defendants' pending summary judgment motion asserts that "the record

---

⁵ This Court has already concluded that Remaining Defendants were not involved in the challenged decision making of the Parole Board.

13

does not demonstrate that Martz' beliefs are sincere or that they constitute a religion."[6] Doc. 44, p. 5.  Second, they assert that Martz was denied parole for reasons unrelated to his lack of participation in the TC program.  See id. at p. 6.

As previously discussed by this Court's earlier rulings in this matter, the First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..."  U.S. Const. Amend. I.  An inmate must be afforded reasonable opportunity to exercise his religious beliefs under the First Amendment.  Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).  However, imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion.  Thornburgh v. Abbott, 490 U.S. 401, 407 (1989).  The Third Circuit Court of Appeals in Bobko v. Lavan, 157 Fed Appx. 516 (3d Cir. 2005), addressed a claim by a prisoner who refused to participate in TC.  The Court of Appeals recognized that state officials violate the First Amendment's Establishment Clause when it requires a prisoner to participate in a drug or alcohol rehabilitation with a religious component. However, since the Defendants in Bobko "submitted evidence establishing that SOS, a secular approach to recovery, is available in the TC program" the Court of Appeals determined that there was no Establishment Clause violation.  Id. at 518.

An inmate plaintiff must establish that he had a sincerely held belief which was religious in nature and that a prison policy or official practice substantially burdened his

---

[6] There was no prior argument raised by Remaining Defendants that Martz's religious beliefs were not sincerely held.

14

exercise of those religious beliefs in order to succeed on a First Amendment claim. Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981).

With respect to their first requirement, Remaining Defendants have provided a copy of a parole summary which reflects that Plaintiff's religion was listed as being Catholic. See Doc. 46, Exhibit A. It is also noted that Martz has not identified or adequately described his religious beliefs other than to indicate that they conflicted with the T.C. program because the program included references to God and spirituality. The Plaintiff has also not come forth with any facts which could support a determination that participation in TC would conflict with the exercise of Catholic beliefs. Based upon those considerations, it is the conclusion of this Court that Plaintiff has not satisfied his burden of establishing that he had a sincerely held belief which was religious in nature.

Substantial burden is satisfied when: (1) a prisoner is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning a precept of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. Gould v. Beard, 2010 WL 845566 * 4-5 (W.D. Pa. 2010). Once a viable claim is asserted, the Government has the burden of demonstrating the burden furthers a compelling governmental interest and is the least restrictive means of doing so. See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007).

It is initially noted that Plaintiff was not required to participate or subscribe to any religious or spiritual activities or beliefs. Rather, he was simply given the option of

15

participating in TC.[7]  As discussed above, Plaintiff does not specifically describe his religious beliefs.  Martz has also not come forth with any facts which could support a determination that participation in TC would conflict with the exercise of Catholic or any other religious beliefs.

Second, Remaining Defendants have also provided the Court with a copy of an August 16, 2012 DOC Vote Sheet which clearly establishes that Remaining Defendant Chismar voted in favor of recommending that Plaintiff be paroled upon reaching his minium parole eligibility date.  See Doc. 46, Exhibit B.  This submission clearly undermines any claim that Chismar opposed the release of the Plaintiff because of his failure to participate in TC.[8]

Based upon a review of the undisputed, Plaintiff has not satisfied his burden of demonstrating that he had a sincerely held religious belief.  He has also not presented facts which could support a claim that either of the two Remaining Defendants Chismar and Vivian engaged in any conduct which substantially burdened his exercise of any religious beliefs.  Since Plaintiff was afforded a favorable institutional recommendation for parole,

---

[7]  Prisoners of all faiths participate in TC and other substance abuse programs offered at the prison.

[8]  Remaining Defendants have also provided a copy of the Parole Board's October 4, 2012 decision which clearly provides that Plaintiff was denied parole because of his need to complete additional institutional programs; a risk and needs assessment indicating his level of risk to the community; failure to demonstrate motivation for success.  See id., Exhibit C.  The decision did state that at Petitioner's next review the Parole Board would consider whether Martz had successfully participated in TC.  Finally, a May 6, 2013 decision by the Parole Board which granted Martz his release on parole has also been provided to the Court for consideration.  See id. at Exhibit E.

there has simply been no conduct that either Remaining Defendant violated Plaintiff's rights under the Establishment Clause or impeded the prisoner's parole eligibility because of his failure to enroll in TC.[9]

**Conclusion**

In this action, Plaintiff claims that prison officials told him that he would have to complete a substance abuse program known as Therapeutic Community (TC) in order to obtain favorable parole consideration.

By Memorandum and Order dated February 8, 2012, dismissal was granted in favor of Defendants SCI-Coal Twp.; the SCI-Coal Twp. TC program; the Pennsylvania Department of Corrections; and the Pennsylvania Department of Probation and Parole. Dismissal was also granted in favor of Remaining Defendants Chismar and Vivian with respect to the claims against them in their official capacities.

A September 4, 2013, Memorandum and Order issued by this Court partially granted Remaining Defendants Chismar and Vivian's motion for summary judgment. Summary judgment was granted with respect to the claims that: (1) the two Remaining Defendants violated the terms of Plaintiff's criminal sentence; (2) Plaintiff would have to serve his maximum sentence because his refusal to attend TC programming would preclude a favorable DOC parole recommendation; and (3) violation of his right of access to the court. The request for summary judgment was denied with respect to the sole limited claim that Remaining Defendants violated Plaintiff's rights under the Establishment Clause of the

---

[9] It is noted that since Plaintiff was afforded release on parole any Wilkinson type claim against a Parole Board official for injunctive or declaratory relief would appear to be moot.

17

First Amendment because Martz was allegedly denied parole on his minimum release date for failure to complete TC.

In this Memorandum, the Court addresses Remaining Defendants' second motion for summary judgment wherein they seek relief on the grounds that: (1) the record does not support Plaintiff's claim of a violation of the Establishment Clause; (2) Remaining Defendants were not personally involved in the denial of parole; (3) Plaintiff failed to comply with the exhaustion of administrative remedies requirement; and (4) § 1983 cannot be used to challenge a parole decision

Based upon a review of the undisputed facts and the applicable legal standards it is the conclusion of this Court that:  (1) Plaintiff cannot use this civil rights action to obtain his release or challenge the fact or duration of his confinement; (2) any attempt to establish liability against Remaining Defendants based upon either their respective supervisory capacities within SCI-Coal Twp. or their review of any institutional grievance filed by Plaintiff is insufficient; (3) Remaining Defendants Vivian and Chismar were not involved in the actual decision making conducted by the Parole Board with respect to the Plaintiff; (4) this matter was filed prior to the Parole Board's initial decision to deny parole, as such any claim against Remaining Defendants regarding said decision was not properly exhausted; (5) with respect to the Establishment Clause claim, Plaintiff has not satisfied his burden of showing that he had a sincerely held belief which was religious in nature; (6) Remaining Defendants Chismar and Vivian did not engaged in any conduct which substantially burdened Plaintiff's exercise of any religious beliefs; (7) Chismar did not oppose the parole of the Plaintiff because of his failure to participate in TC; and (8)

Plaintiff was given a favorable DOC recommendation for parole.

As a result of those determinations, the granting of summary judgment in favor of Remaining Defendants Chismar and Vivian is appropriate with respect to the surviving, limited claim that they violated Plaintiff's rights under the Establishment Clause of the First Amendment with respect to the Parole Board's initial denial of parole to Martz on his minimum release date for failure to complete TC.  Since there are no remaining claims pending before this Court, this matter shall be closed.  An appropriate Order will enter.

**BY THE COURT:**

**s/James M. Munley**_____
**JUDGE JAMES M. MUNLEY**
**United States District Court**

**DATED: SEPTEMBER 18 , 2014**